# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# GAINESVILLE DIVISION

**CALVIN L. ROOT, III,**

    **Plaintiff,**

**vs.**                                                   **CASE NO. 1:03CV032-AK**

**JERRY B. MILLER,**

    **Defendant.**

_____/

## OPINION

A bench trial was held this date on Plaintiff's claims that Defendant Jerry Miller violated his constitutional rights under 42 U.S.C. §1983 during a pat down and frisk at the Levy County Jail where Plaintiff was incarcerated on December 18, 2002. (Doc. 21). Evidence was presented by both sides and based upon this testimony and documentary evidence the following findings of fact and conclusions of law, pursuant to Rule 52, Federal Rules of Civil Procedure, are herein made.

## FINDINGS OF FACT

1. The only evidence that Plaintiff exhausted the grievance procedure at the Levy County Jail is Defendant's Exhibit-3.

2. The initials "TD" on the form (Defendant's Exhibit-3) are not the initials of Tracy Days, the jail employee who would have signed for the grievance and forwarded it to the appropriate person for response and is the only person at the jail who would have

signed for it with those initials, and these initials appear to have been forged by someone other than Tracy Days.

    3.  The Levy County Jail's procedure with regard to grievances is that an inmate files a grievance by obtaining a three part form from any officer, completing the white top copy, and either giving it to an officer or placing it between the bars of their cell for pick up by the mail personnel the following morning.

    4.  When the grievance is picked up, the initials of the receiving officer are written on the top copy, the pink copy is left with the inmate, and the white and yellow copies are taken.

    5.  The grievance is read by mail room personnel; during the time in question Tracy Days, "TD," would determine if the grievance addressee was the appropriate person to handle the complaint, and, if not, she would place the grievance in the mail box of the appropriate person for response.

    6.  A grievance complaining of sexual conduct was of such a serious nature that she would have immediately hand delivered it to her superior, Lt. Mike Sheffield.

    7.  After a response is made to a grievance, the white copy is placed in the inmate's file and the yellow copy with the response is returned to the inmate.

    8.  Mike Sheffield would have turned the issue of alleged sexual misconduct over to an internal investigative officer who would interview everyone involved.

    9.  If the allegations of sexual conduct were found to be true, the officer involved would have been terminated immediately, he could likely lose his certification as a

**No. 1:03cv032-ak**

corrections officer and law enforcement officer, and criminal charges might be brought since sexual misconduct by a corrections officer with an inmate is a felony in Florida.

10. Plaintiff's reasons for not filing follow-up grievances on the issue of sexual misconduct after he failed to get a response to his first one are not credible.

11. Deputy Brian Marra was present at the door of Plaintiff's cell during the pat down and observed Defendant Miller performing a routine pat down, and the prisoner-witnesses were in their own cells.

12. None of the prisoner witnesses who allegedly saw the pat down by Defendant Miller were physically positioned to be able to see the search in Plaintiff's cell.

13. Based on testimony by both parties, and witnesses, there is no credible evidence that Plaintiff was sexually fondled or groped during the pat down by Defendant Jerry Miller on December 18, 2002.

14. If Deputy Marra had observed any sexual misconduct by Defendant Miller it was his responsibility to report it immediately because sexual misconduct by a corrections officer is a crime.

## CONCLUSIONS OF LAW

a) Exhaustion

The Supreme Court has recently upheld the law in the Eleventh Circuit, citing with approval the Eleventh Circuit's position that exhaustion is a mandatory provision, no longer left to the discretion of the district court, and that a prisoner must complete the process as the institution requires, including appeals. Woodford v. Ngo, 126 S.Ct.

**No. 1:03cv032-ak**

2378, 2382 (2006). The proof at trial was that Levy County Jail had a grievance procedure in place that allowed inmates who were dissatisfied with conditions at the jail to make their concerns known to the jail via a written form for which they would be given a receipt and that if they were likewise dissatisfied with the response or failed to get a response they could file additional grievances continuing up the chain of command even up to the sheriff.

The Prisoner Litigation Reform Act (PLRA) makes exhaustion mandatory. Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998). There is no discretion to waive this requirement. Id., at 1325. This Court may not consider the adequacy or futility of administrative remedies, but only the availability of such. Higginbottom v. Carter, 223 F.3d 1259, 1260-61 (11th Cir. 2000), citing Alexander, 159 F.3d at 1323. Plaintiff claims that he had filed a grievance the same night, which had been received and initialed, but he was then told by Sgt. Smith not to file any more grievances, and so he discontinued pursuing this grievance about sexual misconduct because he feared retaliation. The Court does not find this explanation to be credible because Plaintiff was moved to a segregated cell the day after the incident occurred, where presumably he could solicit officers other than those overseeing him in general population to re-file his grievance. He also testified that he had filed over one hundred grievances while he was at Levy County Jail. It is not credible that he would be so fearful about this most serious grievance and stop his grievance activity based on one threat by Sgt. Smith. Finally, while the Court is not a handwriting expert, it is clear that the handwriting purported to be that of Tracy Days, "TD," is clearly different from her initials on other grievance forms

**No. 1:03cv032-ak**

received by her from Plaintiff, and this was an obvious attempt by someone to forge her initials on the grievance to establish exhaustion on the claim concerning sexual misconduct by the Defendant. Plaintiff's additional explanation that someone, another inmate or another officer, might have taken the grievance before it could be retrieved by Days does not explain the fact that he claims to have gotten a receipt for his grievance by "TD," it just did not go to the proper person for response. The serious nature of the allegations allegedly made in the grievance if retrieved by any jail personnel would have received immediate attention, and it is simply not credible that some other inmate would have taken it from Plaintiff and even less credible that some third person would forge the initials "TD."

Thus, the Court finds that Plaintiff failed to exhaust administrative remedies through the grievance system at Levy County Jail and finds for Defendant on this issue.

b) <u>Excessive Force/Sexual Misconduct</u>

The Court also finds that Plaintiff failed to substantiate his claims on the merits. In his complaint, Plaintiff alleged that the following acts took place on December 18, 2002:

> Defendant Miller "grabed [sic] my private area and in a fondling motion played with my penis and testicles at which time I raised my voice and asked him what he was doing. He said I could have had cigerettes. [sic] He then grabed [sic] the sides of my pants bouncing me up and down puling my underwear into my buttocks and crushing my testicles.

As Defendant and his witnesses, Brian Marra and Mike Sheffield, testified, allegations of sexual abuse by corrections officer upon inmates are <u>very</u> serious, indeed in the State of Florida they are felonies. Tracy Days, who is currently Assistant to the Levy County

**No. 1:03cv032-ak**

Jail Administrator, testified that if she had received allegations of sexual abuse in a grievance she would have immediately taken the grievance to then Lt. Mike Sheffield, then Chief of Security. Captain Sheffield testified that such allegations would have been investigated immediately and thoroughly and if found true would have resulted in the termination of the officer, who would likely lose his certification and be charged criminally. The sexual element of Plaintiff's allegations, as supported by the sworn affidavits of several alleged eye witnesses, was the basis of this case going forward to trial. The allegation of a "crushing" of his testicles constituted, in the opinion of the Court, a physical injury as required by the PLRA. (See Doc. 46, Report and Recommendation). At trial, Plaintiff's testimony about what happened during the pat down was significantly watered down from the allegations made in the complaint. He described an over-the-clothing pat down in the genital area, then Miller allegedly "squeezed down" on him, and grabbed his waist band pulling him off the ground. The sole injury he described was an emotional one, a fear he experiences when facing similar situations in the prison facility he now resides in. He did not mention any crushing of his testicles or extended fondling of his penis or pulling his penis back into his buttocks. Likewise, his witnesses offered general and conflicting descriptions of the incident where they could see Miller performing a pat down outside the clothing putting his hands up between Plaintiff's legs and in Witness Christopher Romans's words, "groping." Both witnesses, Lonnie Wilsey and Christopher Romans, gave testimony on the stand that conflicted with their prior deposition testimony. Particularly, Romans testified at trial that Wilsey saw the pat down of Plaintiff, but had testified during his

**No. 1:03cv032-ak**

deposition that Wilsey did not see the pat down because he was in the shower. Wilsey testified at trial to seeing the whole incident and recalling that Defendant Miller "pulled back" on Plaintiff hurting him, but at his deposition he testified that he saw Miller search Plaintiff putting his hands between his legs and nothing more. He was asked if Defendant injured him and he said, "No, not really."

Even more telling, however, is the description the inmates provided of the shakedown generally on December 18, 2002. According to them the inmates were roaming free in the day room outside their cells while a shakedown was being conducted by Defendant Miller. They were allegedly told not to go into their cells so they would not flush anything and were allowed to stand near Plaintiff's cell door behind as Defendant Miller and watch as he conducted the search and frisk of Plaintiff without any other officer present. This account of the search is highly improbable. Both Defendant Miller and Officer Brian Marra testified that security concerns would not allow for the inmates to be milling around the cell door of another inmate being searched nor would an officer attempt to do this alone. Security procedures required that inmates be confined to their cells during a shakedown and that an officer be positioned at the cell door while another officer performed the search and frisk.

Defendant provided a schematic of the pod area (Defendant's Exhibit-1) which shows that Plaintiff's cell No. 119 was at the far end of the cell block and the only way the witnesses could have seen the search would be if they were standing around the cellblock at his door, and the Court does not find it credible that they were allowed to do that at that time. What is credible is that Miller and Officer Marra were conducting the

**No. 1:03cv032-ak**

search together and had the other inmates secure in their cells waiting to be searched during this shakedown.  It is also not credible that given the probable consequences of any type of sexual misconduct that Defendant Miller would inappropriately touch Plaintiff in clear view of other inmates or anyone else for that matter and it is also not credible that he would be in the cell with two inmates during a pat down by himself.  Thus, the Court does not find that any sexual touching, fondling or groping occurred during the pat down of Plaintiff by Defendant Miller nor did any injury occur.  Without these elements, Plaintiff's claim fails.  See Boddie v. Schnieder, 105 F.3d 857 (2nd Cir. 1997) ("isolated episodes of harassment and touching" are not incidents of constitutional proportions, only  "severe or repetitive sexual abuse of an inmate by at prison officer" could be serious enough to state an Eighth Amendment violation);  Boxer v. Harris, 437 F.3d 1107 (11th Cir. 2006) (even sexual element will not sustain a claim if there is no more than *de minimis* injury and forced masturbation is not enough); Kemner v. Hemphill, 199 F. Supp.2d 1264, 1267 (N. D. Fla. 2002) (pat frisk of genital area and buttocks is not a physical injury within meaning of PLRA).

Thus, based on the above findings of fact and conclusions of law the Court finds for Defendant on both the claim of exhaustion and the substantive claim of excessive force/sexual abuse. A Final Judgment shall be entered this date in accordance with this Opinion.

**DONE AND ORDERED** this 2nd day of April, 2007.


s/ A Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


**No. 1:03cv032-ak**